And we'll move on to the next matter, which is SCC v. Alta Hawi, 22751. Thank you. Thank you, Your Honor. May it please the court. I'm Robert Haim, Attorney for Appellant Andy Alta Hawi. The judgment below should be reversed. Mr. Haim, can you fix your, the audio is not great. Is this any better, Your Honor? That's better, better, yes. Thank you. The judgment below should be reversed because the District Court abused its discretion in not granting the modification of the final judgment sought by Appellant Andy Alta Hawi. The modification sought would be to accurately describe Mr. Alta Hawi's settlement payment to the SCC as restitution. The District Court abused its discretion by not granting relief under either Federal Rule of Civil Procedure 60B6 or 60B5. In the court below, Mr. Alta Hawi sought a minor and non-substantive modification of the District Court's final judgment, which was entered on consent on June 7, 2019. The modification sought by Mr. Alta Hawi was to add language to the judgment that accurately stated that Mr. Alta Hawi's settlement payments to the Appellee United States Securities and Exchange Commission was either in the form of restitution or to come into compliance with the law. And that language was taken from the Internal Revenue Code Section 162F, which determines deductibility of payments for these types of settlements. Mr. Alta Hawi's settlement payment to the SCC only became qualified to be treated as restitution on April 15, 2020, when the District Court established a fair fund under the Sarbanes-Oxley Act. So the establishment of the fair fund was contemplated in the consent judgment, is that correct? Yes, it was contemplated in the consent judgment, but there's two important points to note about that. Number one, the consent judgment does not make the establishment of the fair fund mandatory. It was something that was in the discretion of the SCC. And secondly, the deductibility of the payments for Mr. Alta Hawi on his tax return was not something he could do until the fair fund was established. So even though it was contemplated in the consent judgment, until the fair fund was actually established, the language was really meaningless from the tax analysis. I don't think that this is part of the record, but do you know, was the fair fund part of the discussion in the lead up to the final consent judgment? It was not a material part of the discussion. You're breaking up again, Mr. Hawi. It was not a material part of the discussion on the settlement. I represented Mr. Alta Hawi in that settlement. And really the negotiation centered around the amount of the disgorgement payment and the civil penalty payment. The language for the fair fund was included, as is typically done in SCC settlements, that allowed them to do that, but it wasn't definitive. Is there any reason why the original judgment could not have included the language you wanted, saying, and upon establishment of a fair fund, colon, and then the language you want that, you know, the funds shall be deemed, and whatever the language is, shall be deemed, you know, to constitute restitution or payments made in order to come into compliance with the law. Is there anything that would have prohibited the inclusion of that language? I think so, Your Honor, because the SCC has standard language for these. Yeah, well, that's what they would have wanted. Is there, I'm asking, is there anything would have prohibited that? Not whether it's the practice, but could you have asked? Could you ask? It's possible that that could have been requested. We don't know if that would have been included or even approved by the district court. I do know from the SCC's arguments in the opposition papers they filed in this case that they put a lot of emphasis on the, I guess, regularity of their judgments and a reluctance to really tailor the language from case to case. They have a nationwide enforcement program and they prefer to have similar language. So it's a theoretical possibility that that could have been requested, but probably unlikely that the SCC would have agreed to it. But to your knowledge, there's no legal prohibition on that. I understand how in negotiating with another party, we don't know what position they might or might not have taken. And maybe your opposing counsel can enlighten us. But in terms of a legal prohibition, you're not aware of any. No, there wouldn't be any legal prohibition to have that language in there. And I think that is further support of our motion and request to have that language. That's why you're asking. Well, why don't we go back? You're arguing under 60 B-5 and B-6, right? Yes, your honor. So just take B-5. How is a money judgment, the kind of judgment that we ask whether applying it, quote, prospectively, is no longer equitable? Usually when we talk about whether applying something, well, prospectively, we're talking about injunctive relief, something that implies an ongoing obligation. And because injunctions are a form of equitable relief. Again, that's another verbal clue in the text of B-5 that we're talking about injunctions, not about money judgments. So why don't you just tackle that one for us? Yes, your honor. Thank you. Well, two things. First, the determination of whether the payment of this disgorgement portion of the settlement, whether that's tax deductible or not, is still a prospective issue that has to be decided. So that's the first part of it. But that's not applying the judgment. That may be a tax consequence for your client. But if he had had, I don't know, he had paid a money judgment and it was just gone, I don't know, maybe he's paid it all, maybe he hasn't. But if someone pays a money judgment in a different context, in a, I don't know, settling a car accident, and they pay it and a year later, they realize there would have been tax consequences. Would you say that you're applying the judgment prospectively? Yes, your honor, I would, because I think here in this context of an SEC enforcement action, which also encompasses injunctive relief that Mr. Al-Tahawi agreed to, and he did pay the judgment in full. The tax consequences are really not, I guess, insignificant or a minor part of the analysis, as the SEC suggests in their opposition papers. They really qualify as the extraordinary circumstances. What if he were barred from engaging in certain trading activity in the future as a consequence of having entered a settlement agreement? Would you then argue that at any point in the future under B-5, he could reopen this because there's an ongoing consequence, a collateral consequence? I think in that instance, your honor, it would be clear that that is certainly governs prospective application of the judgment. And a lot of the cases, the SEC sites, you know, in terms of institutional reform, litigation and changing consent degrees, come more comfortably under that heading because of changed facts. So the court would have power, in your view, to amend this infinitely into the future as long as there's a collateral consequence to the judgment? No, your honor, because that's only one prong of the analysis. The second prong is that it has to show an extraordinary circumstances or a significant change in those circumstances. So if my client had agreed to refrain from doing certain things and there was an injunction to that, in addition to showing the prospective application, like I just discussed, the client would also have to demonstrate that there was a significant change in circumstances, which would be very difficult to do in that circumstance. But just on the prospective application prong, I do think it would be applicable. Just so this is the way that I understand it. If, for example, the language had been that the SEC in the settlement agreement had been that the SEC will establish a fair fund, and you would agree to that, and then learn about the tax consequences thereafter. You would, I think, in your view, you would not have a compelling 60 B5 motion. Is that correct? I don't know if I would go that far, your honor, because there still has to be the payment that's made to the fair fund and it has to be distributed to the investor. Sure, sure, sure. But if you had agreed to the payment into a fair fund, you would not make the argument that you're making today. Well, it's hard to say. I mean, I think that the contingent on the payment being made, that that's possible. But yeah, but but here that just wasn't part of the language of the agreement. I understand. I understand. I'm just trying to understand your the limits of your argument. Okay. Well, thank you. You have two minutes for rebuttal. We'll hear from the SEC. Good morning, your honor. May it please the court. Brooke Willick for the Securities and Exchange Commission. This appeal presents a narrow question, whether the district court abused its discretion when it declined to reopen a judgment to which Mr. Altawhowie had consented over a year earlier. It did not. As the district court properly concluded, Mr. Altawhowie's motion fails at every turn. It is time-barred, fails to meet the requirements of either Rule 60b-5 or Rule 60b-6, and evinces none of the extraordinary circumstances needed. Ms. Willick, you're also fading out for some reason, I think. I apologize. Is this any better? Yes. Thank you. So Mr. Altawhowie's motion evinces none of the extraordinary circumstances needed to merit such exceptional relief. More fundamentally, Mr. Altawhowie's motion contravenes this court's strong interest in the finality of judgments, particularly settlements and judgments entered on consent. Mr. Altawhowie chose to settle this action by entering the consent judgment. After consulting with legal and tax advisors, he agreed to be bound by these particular terms and their consequences. That means he might now have to pay more in taxes than he might otherwise have hoped. That's not a basis for reopening the judgment. That's the choice he made, whether he appreciated it or not. So counsel, can I ask, why is this any skin off the SEC's back? I mean, I take it that there's agreement that had this language. Well, actually, let me back up. In your view, would there have been a prohibition on including this language in the judgment if it had been foreseen by the parties earlier? I don't believe there is a legal prohibition on including this language in the judgment. And what would the SEC's position have been at the time, or do you know? And I'm not asking to put you on the spot, but do you know what the SEC's position would have been had it occurred to people back then? Would you have said, yeah, yeah, that's fine? Your Honor, I don't know. You know, I think that, again, the particular facts and circumstances of each case are different. And here is the posture of this case. The fact that we are addressing this in the Rule 60 context after the fact is very much the point. Does the SEC ever agree to language like this, where it's agreed and a fair fund will be established, and then you use the magic words, and such payments will be deemed restitution or payments to bring one into compliance with the law? I don't know that we have ever done this before. And I will say that I think there are other reasons why the language, as drafted by Mr. Al-Fahawy in particular in his proposed judgment, is not language that we would agree to as drafted. So there may not be a legal prohibition, as well as I understand it, but there are potentially significant policy implications to that language. Yes, I mean, yes, Your Honor. I mean, I think, as Mr. Al-Fahawy was saying, I think, you know, this consent judgment, as I understand it, is fairly typical of consent judgments. And there are reasons we would be disinclined to include the language that Mr. Al-Fahawy has sought. But again, I think the point remains that there's nothing new here, that the law, Section 162F, remains as it was at the time. And as the Court was discussing, the creation of the fair fund was anticipated. We're losing you again, Ms. Blumenthal. Sorry about that. Okay. I was simply saying that the creation of the fair fund, as this Court was discussing, was anticipated by the parties. Nothing stopped Mr. Al-Fahawy from trying to bargain for the terms that he's now seeking. And if he failed to achieve those terms, then deciding whether or not he wanted to settle on those terms at all or proceed to judgment. Will the district court be supervising the distribution of the fair fund? And if so, did that give the judgment prospective effect? Yes. The district court is currently overseeing the administration of the fair fund. But that does not provide prospective effect here because Mr. Al-Fahawy is not seeking to challenge any of the provisions of the judgment involving the fair fund. Just as he's not seeking to challenge any of the provisions involving injunctive relief. The only thing he's seeking to modify is the language ordering him to pay money to the commission, money that he already paid. Mr. Al-Fahawy's motion, in addition to contravening these fundamental principles finality, fails to merit relief under Rule 60B for at least three reasons, as the district court concluded. It is time barred under Rule 60C. I will note Mr. Al-Fahawy is focused on appeal on this claim that the creation of the fair fund is a change in circumstances. But he never argued that before the district court below. And this court should therefore decline to reach any argument based on that because the district court simply can't have abused its discretion in declining to create relief on a basis that was never presented to it. Below, Mr. Al-Fahawy based his motion on his failure to appreciate the tax consequences of the judgment at the time it was entered. That is a species of mistake, and such a motion should have been brought under Rule 60B-1 within one year. It did not, and thus it was time barred, and this court can affirm on that basis alone. Mr. Al-Fahawy's motion also fails under Rule 60B-5, as this court has pointed out, because it has no prospective force. As cases like Tapper make clear, that is the end of the inquiry, regardless of whether any circumstances have changed. Relief under Rule 60B-6 is also foreclosed because the substantive basis for relief were covered by the preceding prongs of Rule 60B. If there are no other questions, happy to answer any questions. Otherwise, the commission will rest on its feet. Thank you. We'll hear from Mr. Heim. Thank you, Your Honor. I'd like to address one of the points the SEC made, which is a theme throughout their opposition papers, and that's that Mr. Al-Fahawy is seeking to somehow rewrite the judgment that he agreed to, and that's simply not the case. Mr. Al-Fahawy is not seeking to change any of the payment provisions of the judgment. He made very substantial payments to the SEC. He's not challenging that. He's not challenging the injunction. He's really not seeking to change... You're seeking to change the language of the settlement. We are seeking to change the language of the settlement, but in a way that merely just characterizes the payment that really there's no dispute over that it went to the Fair Fund and it's being used to provide restitution to the long-fin investors, and that sort of language would not change, so to speak, any of the other operative provisions of the judgment. And there would be really no prejudice at all to the SEC in terms of having this language placed into the judgment because it is an accurate description of what actually happened with regards to the settlement payment and the Fair Fund. Why does this promotion really most, if it fits anywhere, fall under B-1 for inadvertence or surprise or neglect? Why was an emotion made pursuant to 60B-1, putting aside that when it was actually made, it would have been time-barred under that rule? But isn't that the provision that applies if any of these provisions of 60B apply? No, Your Honor, because this relief could not have been sought until April 15, 2020, which is the date that the district court established the Fair Fund. So there's not a mistake in that sense. It only became available to Mr. Al-Tahawy once the Fair Fund was formally established by the district court. But it's inadvertence that the closest it would seem to me to be would be inadvertence that this wasn't included in the judgment, which would fall under B-1. Well, I would respectfully disagree with that, Your Honor, because until the payment is actually made to the Fair Fund, and that was discretionary with the SEC in order to apply to the court or decide not to apply to the court. Mistake is one of the arguments that the SEC is trying to argue, but it's really not the basis by which we're trying to seek to modify the judgment. It's really the significant change, very significant change on April 15, 2020, when the court set up the Fair Fund and the extraordinarily harsh tax implications that Mr. Al-Tahawy will have to pay millions of dollars of tax on money that he never received and he can never get a deduction for otherwise. Okay. Well, thank you very much. Another interesting case. Thank you, Your Honor. We will reserve the decision.